M.H. v S.A. (2025 NY Slip Op 51713(U))

[*1]

M.H. v S.A.

2025 NY Slip Op 51713(U)

Decided on October 27, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 27, 2025
Supreme Court, Kings County

M.H., Plaintiff,

against
S.A., Defendant.

Index No. 531568/2023

McCallion & Associates LLP, New York City (Kenneth F. McCallion & Darragh O'Boyle of counsel), for plaintiff
Harris St. Laurent & Wechsler, LLP, New York City (Jaclyn D. Newman and Andrew St. Laurent of counsel), for defendant

Aaron D. Maslow, J.

The following numbered papers were used on this motion:
Submitted by Defendant in Support: NYSCEF Document Nos. 75-95
Submitted by Plaintiff in Opposition: NYSCEF Document Nos. 97-98
Submitted by Defendant in Reply: NYSCEF Document Nos. 100-107
Upon the foregoing papers and having heard oral argument on the record, the within motion by Defendant for an "Order pursuant to CPLR 3211(a)(5) and 3211(a)(7), and, in connection with allegations of out-of-state conduct, on the basis of the Court's lack of jurisdiction, dismissing the Amended Complaint in this action (NYSCEF Doc. No. 71)" (NYSCEF Doc No. 75 at 1), is determined as follows.
Factual Background
Plaintiff and Defendant began a romantic relationship in 2008 and started living together in 2010. The parties later registered as domestic partners through Defendant's then-employer, New York University, and share one child, born in Brooklyn in May 2013.
Plaintiff alleges that over the course of their relationship, Defendant engaged in escalating controlling and abusive behavior. This allegedly began with pressure surrounding the termination of Plaintiff's pregnancy in 2009 and a skiing trip to Utah in 2011, during which Plaintiff sustained a torn ACL. Plaintiff states that after moving in together, frequent verbal altercations occurred in their Manhattan residence, and that Defendant engaged in aggressive conduct including yelling, blocking her movements, and physically restraining her.
In 2012, while the parties were living in Manhattan, Plaintiff alleges that Defendant screamed at her until she lost consciousness and subsequently shook her, causing bruising. Plaintiff further states that Defendant routinely monitored her communications and accused her of "whoring around" when she was with her male friends. Around this time, she was diagnosed with Celiac disease, which she attributes in part to the alleged emotional stress.
After their child was born in May 2013, Plaintiff and Defendant relocated to Massachusetts when Defendant accepted a position at the Massachusetts Institute of Technology (MIT). They resided in Boxford, MA, and maintained a condominium in Williamsburg, Brooklyn. Plaintiff asserts that she worked part-time at MIT and alleges that Defendant controlled their joint finances, threatened her about losing her job, and later defunded her position.
In 2014, Plaintiff alleges that Defendant threw a crib box onto her foot during an argument in their Boxford home, injuring her while their infant child was nearby. She states he refused to take her to the hospital until the following day. Later that year, the Plaintiff, Defendant, and their child temporarily relocated to Los Angeles to support Plaintiff's career; however, she alleges that Defendant unilaterally curtailed the stay, requiring her to serve as the child's sole caregiver while he commuted weekly to San Francisco for work.
Plaintiff further alleges that Defendant threatened to evict her from both homes, and that the ongoing stress contributed to her development of additional medical conditions, including Sjogren's syndrome and tachycardia. She reports having a heart monitor implanted in 2016.
Between 2015 and 2018, Plaintiff alleges several additional incidents of violence occurred in Massachusetts, Utah, Brooklyn, and San Francisco. These include physical assaults, verbal threats, and alleged incidents involving their child. In March 2016, while in a Utah hotel, Plaintiff claims Defendant dragged their child by the hood of a jacket. In December 2016 in Utah, Plaintiff alleges that Defendant pushed her onto a bed and choked her. Later that month, she states that Defendant initiated non-consensual sexual contact while she pretended to be asleep. Plaintiff also alleges that Defendant would often call her a "bitch" or "cunt" while strangling her.
In December 2017, in their Brooklyn home, Plaintiff alleges that Defendant shoved her into a metal bar, resulting in swelling, headaches, and nausea. In February 2018, she claims Defendant became enraged over their child crying, threw a baby monitor at her, punched the wall behind her, and punched the bed. She also alleges that he forcibly entered her home after their separation, yelling, stomping his feet, and frightening their child.
Plaintiff further asserts that Defendant engaged in non-consensual sexual conduct during the relationship, including condom removal without her knowledge ("stealthing"), and that such [*2]conduct led to at least one pregnancy. She states that these experiences contributed to her PTSD diagnosis and ongoing need for mental health care.
In June 2018, the parties agreed to separate. Plaintiff alleges that shortly before Defendant was to vacate the Brooklyn condominium, he confronted her about a custody agreement and physically restrained her when she refused to sign it. In October 2023, Plaintiff claims that Defendant came to her home during her scheduled parenting time and refused to leave for approximately an hour, despite repeated requests, prompting her to file a police report.

Procedural Background
In September 2018, Plaintiff filed a complaint seeking an Order of Protection against Defendant based on the allegations underlying this action. On October 23, 2023, Plaintiff commenced the present action, asserting substantially the same allegations as in the 2018 complaint. Shortly thereafter, on November 9, 2023, Plaintiff initiated a separate family offense proceeding in Kings County Family Court ("Family Offense Petition"), again asserting similar allegations. That proceeding was subsequently consolidated with the 2018 action.
On April 8, 2024, Defendant moved to dismiss the initial complaint in this action. Plaintiff later withdrew, with prejudice, the allegations in the Family Offense Petition on May 14, 2024. On July 5, 2024, Plaintiff opposed Defendant's motion and cross-moved to amend her complaint, submitting a proposed amended complaint. Defendant filed a reply on September 20, 2024, opposing amendment and renewing his request for dismissal. Plaintiff submitted a reply in further support of her cross-motion on October 18, 2024.
The Court held oral argument on January 23, 2025. On January 27, 2025, the Court denied Defendant's motion to dismiss and granted Plaintiff leave to amend. Plaintiff filed an amended complaint on January 30, 2025, requesting relief for claims of (1) battery, as timely under the Adult Survivor's Act ("ASA"), and (2) violation of the New York City Gender-Motivated Violence Act ("GMVA").
The Defendant filed the within motion to dismiss the amended complaint on February 26, 2025, arguing that the battery claim is time-barred, the amended complaint fails to state any valid claim under New York law, and the allegations do not sufficiently plead required elements of a sexual offense, gender-based animus, or actual injury. Additionally, Defendant contends that any claims based on incidents outside New York are beyond the court's jurisdiction, and parts of the case are barred by collateral estoppel and res judicata due to prior litigation.

Discussion
I. Plaintiff's ASA and GMVA Claims Are Sufficiently Pled.
Pursuant to CPLR 3211 (a) (7), to dismiss an action, the pleading must state a cause of action; it is not dependent on whether the proponent of the pleading has a cause of action (see Sokol v Leader, 74 AD3d 1180, 1180-1181 [2010]). In deciding the motion, the Court must accept the facts as alleged by the plaintiff as true, accord the plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory (see Leon v Martinez, 84 NY2d 83, 87-88 [1994]).
While a defendant may submit evidentiary material in support of a motion to dismiss under CPLR 3211 (a) (7), once the court considers such material, the test becomes whether the plaintiff has a cause of action, not merely whether one is properly stated (Sokol v Leader, 74 AD3d at 1181-1182, quoting Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]). However, affidavits submitted by a defendant will rarely justify dismissal at this stage unless they conclusively establish that the plaintiff has no cause of action (Sokol v Leader, 74 AD3d at 1182; [*3]Lawrence v Graubard Miller, 11 NY3d 588, 595 [2008]). A motion to dismiss must be denied unless it is shown that a material fact claimed by the pleader is demonstrably false and beyond genuine dispute (Sokol v Leader, 74 AD3d at 1182; Guggenheimer v Ginzburg, 43 NY2d at 275).
a. Gender-Motivated Violence Act
Plaintiff's allegations under the Gender-Motivated Violence Act are sufficient to survive a motion to dismiss. The GMVA requires that " '[a] plaintiff is required to establish the following elements in support of this claim: (1) the alleged act constitutes a misdemeanor or felony against the plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of plaintiff's gender; (4) in part because of animus against plaintiff's gender; and (4) resulted in injury' " (Garcia v Comprehensive Center, LLC, 2018 WL 3918180, *5 [SDNY 2018], quoting Hughes v Twenty-First Century Fox, Inc., 304 F Supp 3d 429, 455 [SDNY 2018]). This Court, in Doe v Schlesinger ( — Misc 3d —, 2025 NY Slip Op 25149 [Sup Ct, Kings County 2025]),[FN1]
 recognized the adoption of the GMVA in this jurisdiction through the "Home Rule" provision. With respect to whether the use of a gendered term can support a claim under the GMVA, there is currently no binding authority on this issue before this Court. However, there is consensus among the United States District Court, Southern District of New York and the First Department that the pleading of a GMVA cause of action requires that the use of a gendered term while assaulting plaintiff can create the inference that the defendant committed the act at least in part based on the plaintiff's gender. The First Department in Breest v Haggis, has the broadest reading of gender-based animus when it determined that the animus provision in VGM [FN2]
should be interpreted to mean malice or ill will, and that the plaintiff's claims of rape and sexual assault were sufficient without needing further evidence of gender-based animus (see Breest v Haggis, 180 AD3d 83, 94 [1st Dept 2019]).
In Roelcke v Zip Aviation, LCC, the defendant calling the plaintiff "a 'whore,' a 'little bitch,' and a 'worthless bitch' while grabbing her by the throat and physically dragging her to the door of the apartment and throwing her outside," was also sufficient in the Southern District of New York to assert a GMVA claim (see Roelcke v Zip Aviation, LCC, 2018 WL 1792374, *13 [SDNY 2018]). Similarly, in Eckhart v Fox News Network, LLC, the Southern District of New York held that the "combination of sexual assault and the repeated use of derogatory language supports an inference of [the defendant's] animus toward women" (Eckhart v Fox News Network, LLC, 2021 WL 4124616, *26 [SDNY 2021]). Conversely, in Hughes v Twenty-First Century Fox, Inc.where the conduct demonstrated by the defendant contributed to an " 'unsettling, intimidating and unprofessional' work environment" and plaintiff and defendant were in a sexual relationship, plaintiff there offered no specific allegations that defendant harbored or expressed [*4]any animosity toward women, and therefore the GMVA claim was insufficient (Hughes v Twenty-First Century Fox, Inc., 304 FSupp 3d 429, 436, 455 [SDNY 2018]).
Plaintiff's allegations here are akin to Breest, Roelcke, and Eckhart — specifically, being called a "bitch" and "cunt" during strangling episodes and the use of explicitly gendered terms during acts of physical violence support an inference that the conduct was motivated at least in part by gender-based animus (NYSCEF Doc No. 71, ¶ 33). Further, the situation here is distinguishable from Hughes, as the allegation of being called explicit, gender-specific slurs during acts of violence goes beyond the merely an "unsettling, intimidating and unprofessional" environment described in Hughes.
Plaintiff pleads that other instances fall under the GMVA, particularly, restraining Plaintiff, punching a pillow next to her head, screaming at her until she lost consciousness, grabbing and bruising Plaintiff's arms, throwing a crib box at Plaintiff's foot, and shoving Plaintiff into a metal bar. These allegations do not meet the GMVA standard, like in Hughes, as they notably are not pled showing any animus against Plaintiff's gender. Courts have held that when the allegations in the complaint are devoid of facts demonstrating that the violent act were committed based on gender and due at least in part to the plaintiff's gender, the GMVA cannot stand for these specific claims as alleged by the plaintiff (see Breest v Haggis, 180 AD3d at 92, citing Hughes v Twenty-First Century Fox, Inc., 304 F Supp 3d at 455; Gottwald v. Sebert, 2016 WL 1365969, *21 [Sup Ct, NY County 2016]).
Therefore, the claim of a GMVA cause of action is sufficiently pled and defeats Defendant's motion to dismiss for the GMVA claim. The GMVA-covered incidents did not occur in a vacuum — Plaintiff was also called a "bitch" and a "cunt," and was accused of "whoring around."
b. Adult Survivor's Act
Plaintiff sufficiently pleads battery under the ASA. In the context of claims involving sexual offenses under Penal Law Article 130, the ASA allows plaintiffs to bring civil actions for conduct that would constitute a sexual offense under that article, even if the statute of limitations had previously expired. Courts have held that allegations of unpermitted sexual contact that violate Penal Law Article 130 are sufficient to trigger the revival provisions of CPLR 214-j, rendering the action timely. The Southern District of New York comments that, "[f]or a claim to be revived pursuant to the ASA, a defendant's underlying conduct must 'constitute a sexual offense as defined in article one hundred thirty of the penal law' and have been 'committed against such person who was eighteen years of age or older' " (Johnson v NYU Langone Health, 2023 WL 6393466, *2 [SD NY 2023], quoting CPLR 214-j).
In accepting all of Plaintiff's facts as true, as required on a motion to dismiss, and considering the claim of battery under Penal Law §§ 130.35 (rape in the first degree), 130.25 (rape in the third degree), 130.50 (criminal sexual act in the first degree), 130.40 (criminal sexual act in the third degree), 130.65 (sexual abuse in the first degree), 130.55 (sexual abuse in the third degree), and 130.52 (forcible touching), Plaintiff does meet the standard to withstand Defendant's motion to dismiss. In People v Patterson, the Court noted that there was no evidence that the defendant physically or verbally abused the plaintiff, or the complainant feared the defendant's reaction if she refused to comply with the subject sex acts. The victim there testified that the defendant had never physically harmed her, yelled at her, been angry with her, argued with her, took her money, or induced her to engage in prostitution (see People v Patterson, 214 AD3d 674 [2d Dept 2023]). Therefore, the Court held that there was no forcible touching and no [*5]sufficient claim under Penal Law Article 130 (id.). Conversely, here, Plaintiff's claims regarding the history of Defendant's violent acts towards her, Defendant initiating sexual intercourse without Plaintiff's consent, and his strangling Plaintiff, followed by uninvited touching, sufficiently state a cause of action, and Defendant has not produced any evidence that would conclusively establish the contrary.
Further, stealthing — the act of non-consensually removing a condom during sexual intercourse — is not explicitly defined as a crime under New York law and does not fall under the existing statute addressing sexual offenses of Penal Law Article 130. Penal Law § 130.05 states that every offense defined in the article involves a lack of consent, which results from "[f]orcible compulsion"[FN3]
or "[i]ncapacity to consent"[FN4]
(see Penal Law § 130.05). Here, the act of stealthing does not involve a lack of consent as defined by Penal Law § 130.05. Plaintiff's allegation that the removal of a condom that occurred "without Plaintiff's permission or even notification" does not fall within with the definition, because a threat that places a person in fear necessarily requires that the person knows the threat is occurring. Here, Plaintiff specifically alleges that she was not notified that the condom was removed, and she does not claim that any physical force was used to make her aware of or fear the act. Without knowledge of the act or any force used to communicate a threat, there can be no threat that places a person in fear under the statute. Additionally, the act of stealthing as described by Plaintiff does not occur due to Plaintiff's [*6]incapacity to consent as defined by Penal Law § 130.05 (3).
II. Collateral Estoppel Does Not Bar Plaintiff's Claims Arising from the October 2023 Incident, Which Was Withdrawn Without Adjudication in Family Court.
Pursuant to CPLR 3211 (a) (5), a motion to dismiss based on collateral estoppel requires the moving party to demonstrate that the issue in the current action is identical to one that was previously raised, necessarily decided, and material to a final judgment in a prior proceeding, and that the opposing party had a full and fair opportunity to litigate that issue. Collateral estoppel prevents the relitigating of specific issues that have already been adjudicated, even if the underlying causes of action or forums differ (see Villaver v Paglinawan, 230 AD3d 533 [2d Dept 2024]). The burden rests on the party invoking estoppel to prove that the issue was both identical and decisive in the earlier action, while the opposing party must show they lacked a fair opportunity to contest it (id.). Courts have declined to apply collateral estoppel where the issues were not identical or where the prior decision was not essential to the judgment (see Harco Constr. v Scottsdale Ins. Co., 148 AD3d 870 [2d Dept 2017]).
In the case of Maybaum v Maybaum, the Court held that the withdrawal of a family offense petition with prejudice did not constitute a determination following a full and fair opportunity to litigate the issues (see Maybaum v Maybaum, 89 AD3d 692 [2d Dept 2011]). The Court there emphasized that collateral estoppel applies only to matters that are actually litigated and determined in a prior action (id. at 695). Since the issue of whether the plaintiff committed certain acts was never determined in the family court proceeding, the withdrawal of the petition could not preclude the defendant from litigating the same issue in a subsequent civil action (id. at 48). Similarly here, Plaintiff voluntarily withdrew the October 2023 incident with prejudice on May 14, 2024, in a Family Offense Petition. Therefore, since the claim regarding the incident was never actually litigated or determined on the merits, the withdrawal with prejudice does not constitute a full and fair opportunity to litigate and does not preclude Plaintiff from raising the issue in the present civil proceeding.
III. Res Judicata Does Not Bar Plaintiff's ASA and GMVA Claims Arising from the Same Incidents Alleged in the Family Offense Petition, Which Sought Different Relief and Was Previously Addressed by the Court.
The legal standard for a motion to dismiss under CPLR 3211 (a) (5) on the ground of res judicata requires the moving party to demonstrate that the cause of action is barred because it was or could have been litigated in a prior proceeding that resulted in a final judgment on the merits. Under New York law, the doctrine of res judicata bars litigation of claims arising out of the same transaction or series of transactions as a prior action, provided that the prior action involved the same parties or those in privity with them, and resulted in a final adjudication on the merits (see Sunny v Hossain, 236 AD3d 699 [2d Dept 2025]; Joseph v Bank of NY Mellon, 219 AD3d 596 [2d Dept 2023]; Jones v Flushing Bank, 212 AD3d 791 [2d Dept 2023]). The doctrine does not apply if the prior action was dismissed on procedural grounds without reaching the merits and if the claims in the new action are distinct from those in the prior proceeding (see Li v Wisteria Gardens Condominium, 234 AD3d 897 [2d Dept 2025]; U.S. Bank Natl. Assn. v Friedman, 175 AD3d 1341 [2d Dept 2019]).
For example, in Xiao Yang Chen v Fischer, the Court of Appeals held that res judicata did not bar a personal injury action following a divorce action because the two actions sought different types of relief and did not constitute a convenient trial unit (see Xiao Yang Chen v Fischer, 6 NY3d 94 [2005]). Here, the Family Offense Petition requested relief in the form of a [*7]full stay-away order, a protective measure focused on immediate safety. It did not encompass the specific allegations of abuse or sexual misconduct now being raised. The current civil action seeks monetary damages and accountability for past harm under the ASA and GMVA, which are separate legal remedies that are not foreclosed by the prior proceeding. Additionally, the ASA provides a one-year lookback window for survivors to bring claims that were previously time-barred, which could further support the argument that the new claims are distinct and not precluded by the prior proceeding. Notwithstanding, the Court already ruled on the issue of res judicata as this issue is bound by "law of the case" (see NYSCEF Doc No. 68). Therefore, res judicata does not bar Plaintiff's ASA and GMVA claims.
IV. Plaintiff's Claims Under the ASA and GMVA Are Timely and Not Barred by the Statute of Limitations.
The standard for a motion to dismiss under CPLR 3211 (a) (5) on statute of limitations grounds requires the moving defendant to establish, prima facie, that the time within which to commence the action has expired. If the defendant meets this burden, the burden shifts to the plaintiff to raise a question of fact as to whether the statute of limitations was tolled, is otherwise inapplicable, or whether the action was commenced within the applicable limitations period (see Bank of New York Mellon v Jones, 239 AD3d 805 [2d Dept 2025]).
As stated above, the claim for battery, as brought under the ASA, is not barred by the statute of limitations because the ASA allows claims for injuries from conduct qualifying as a sexual offense under Penal Law Article 130, or incest under §§ 255.26 or 255.27, even if time-barred or previously dismissed for lack of notice. Additionally, the ASA provides a one-and-a-half year filing window starting six months after the ASA's effective date, May 24, 2022 (see CPLR 214-j). Further, the GMVA provides a civil cause of action for victims of crimes of violence that are committed because of gender or on the basis of gender and are motivated, at least in part, by animus based on the victim's gender with a statute of limitation period of seven years, which was amended in 2022 to provide a revival period (Administrative Code of City of NY § 10-1105). Plaintiff commenced this action on October 30, 2023, and Defendant has not met the burden to prove that the ASA or the GMVA does not apply here. Therefore, since the ASA and the GMVA extend the statute of limitations and the Plaintiff filed this action within the statute of limitation periods, the burden does not shift to Plaintiff, and Plaintiff's action is not time-barred.
V. Court Has Personal Jurisdiction Under CPLR 301, and Venue Is Proper Under CPLR 503 Based on the Parties' New York Residency.
Lastly, Defendant asserts that this Court lacks jurisdiction over the non-New York allegations. Under CPLR 301, personal jurisdiction is proper where a defendant is served while physically present in New York, regardless of the duration or purpose of their stay, and irrespective of whether the underlying claims are connected to their activities in the state. Here, Defendant was personally served in New York and listed a Brooklyn address, satisfying general jurisdiction under CPLR 301. As for venue, CPLR 503 permits venue based either on the county where a substantial part of the events occurred or where a party resided at the time the action was commenced. While it is unclear from the pleadings whether the alleged conduct giving rise to Plaintiff's claims under the ASA and GMVA occurred in New York, Plaintiff maintains that both she and Defendant were residents of New York during all times relevant to the allegations. Accordingly, venue is proper under CPLR 503 based on the parties' residence.
Moreover, the holdings in Samuel W. v United Synagogue of Conservative Judaism (219 [*8]AD3d 421 [1st Dept 2023]) and Huebner v Goodman (231 AD3d 931 [2d Dept 2024], wherein the Appellate Divisions held that the CVA covered acts outside New York, are binding (see Mountain View Coach Lines, Inc. v Storms, 102 AD2d 663 [2d Dept 1984]; see also Doe v Wilhelmina Models, Inc., 229 AD3d 128 [1st Dept 2024]; Pesola v St. Mary's High Sch., 227 AD3d 736 [2d Dept 2024]; Smith v Pro Camps, Ltd., 226 AD3d 936 [1st Dept 2024]; Doe v Archdiocese of NY, 221 AD3d 422 [1st Dept 2023]; Doe v Doe, 83 Misc 3d 408 [Sup Ct, NY County 2024]; Roeg v Warner Group Corp., 83 Misc 3d 1288[A], 2024 NY Slip Op 51239[U], *1-2 [Sup Ct, NY County 2024]; Sutton v Tapscott, 120 F4th 1115 [2d Cir. 2024]; cf. S.H. v Diocese of Brooklyn, 205 AD3d 180 [2d Dept 2022] [plaintiff not resident of New York]). The ASA, like the CVA, merely extended the applicable statute of limitations.
As for the GMVA, this reflected a newly created civil cause of action with respect to not only an "act," but a "series of acts" (Administrative Code of City of NY § 10-1103). The Court construes "series of acts" to subsume not only that which transpired within New York City, but also outside New York City as long as the acts are interrelated, which the complaint herein pleads — that Defendant's conduct constituted a continuum of acts of criminal violence motivated by gender. As such, so long as at least some of the acts transpired within New York City, the GMVA would cover the entire series of acts.

Conclusion
Accordingly, it is hereby ORDERED as follows:
Based on the forgoing, Defendant's motion to dismiss Plaintiff's amended complaint is DENIED.

Footnotes

Footnote 1: Doe stated that the lookback window of the GMVA only revives claims that could have been filed under the GMVA originally but were barred because the statute of limitations had run out. It does not make the GMVA itself apply to acts that happened before the law was enacted. Therefore, this Court held that the plaintiff's claims were nonjusticiable as the alleged sexual abuse occurred before the adoption of the GVMA. This is not the case here.

Footnote 2:New York City Council's Victims of Gender-Motivated Violence Protection Law (VGM) is the same as the Gender-Motivated Violence Act (GMVA).

Footnote 3:Penal Law Article 130.00(8), forcible compulsion, "means to compel by either: "(a) use of physical force; or (b) a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person, or in fear that he, she or another person will immediately be kidnapped."

Footnote 4:As defined by Penal Law Article 130.05 (3), a person has an incapacity to consent when "when he or she is: (a) less than seventeen years old; or (b) mentally disabled; or (c) mentally incapacitated; or (d) physically helpless; or" (e) under the care or custody of employees (or certain contractors/volunteers) of the Department of Corrections and Community Supervision or a state hospital who know or should know is in the custody or supervision of that department or hospital, or (f) under the care or custody of a local correctional facility, and the actor is an employee (or certain contractors, volunteers, or government workers) who knows or reasonably should know that the person is committed to that facility and who provides custody, care, or direct services, or (g) committed to or placed with the Office of Children and Family Services in residential care, and the actor is an employee who knows or should know that the person is in such care; or (h) a client or patient, and the actor is a health care or mental health care provider engaging in sexual conduct during a treatment session, consultation, interview, or exam; or (i) a resident or inpatient of a residential facility operated, licensed, or certified by the Office of Mental Health, Office for People with Developmental Disabilities, or Office of Alcoholism and Substance Abuse Services, and the actor is an employee (or certain contractors, volunteers, or officers) who knows or should know that the person is a resident or inpatient; or (j) detained or in custody of a police officer, peace officer, or other law enforcement official, and the actor is such an official who is detaining the person or knows they are in custody; or (k) under the supervision of a local probation department or similar agency, and the actor is an employee who knows or should know that the person is under such supervision.