L.G. v S.V. (2026 NY Slip Op 50389(U))

[*1]

L.G. v S.V.

2026 NY Slip Op 50389(U)

Decided on March 24, 2026

Supreme Court, Queens County

Maldonado Cruz, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 24, 2026
Supreme Court, Queens County

L.G., Plaintiff,

againstS.V., Defendant.

Index No. 705575/2025

Andrew W. Weitz, Esq. for Plaintiff, L.G.Melinda Sarafa, Esq. for Defendant, S.V.

Lumarie Maldonado Cruz, J.

The following papers read on the motion by S.V. (hereinafter "Defendant") seeking an order dismissing the complaint in its entirety, with prejudice, pursuant to CPLR §§ 3211(a)(5) and (a)(7). In the alternative Defendant seeks to strike Paragraphs seven (7), sixteen (16) and twenty-six (26) through thirty-one (31) of the Plaintiff, L.G.'s (hereinafter "Plaintiff") complaint pursuant to CPLR §3024(b) as scandalous, irrelevant and prejudicial. Plaintiff partially opposes.
Papers NumberedNotice of Motion — Affirmations — Exhibits —Memorandum of Law — Affidavit in Opposition — Exhibits EF 10-14, 18-19Memorandum of Law in Reply EF 21Affidavit in Reply EF 22Defendant's Post-Argument Memo of Law in Further Support EF23Copy of Oral Argument Transcript EF24Plaintiff's Memorandum of Law in Further Opposition EF25
Upon the foregoing papers and having heard oral argument on the record, the within motion by Defendant for an order dismissing the Complaint in this action is determined as follows:
On February 26, 2025, Plaintiff commenced this action by filing a Summons and Complaint, as a pro se litigant, under the provisions of the Gender-Motivated Violence Act. Plaintiff alleges that, from approximately February 1999 through the summer of 2004, she was subjected to repeated acts of sexual touching, molestation, and other forms of sexual abuse by her cousin, the Defendant, in this matter. Plaintiff further alleges that these incidents occurred while she was a minor, both in their shared home and at the Defendant's residence.[FN1]

Defendant now moves to dismiss the complaint on the grounds that the claims are 1) time barred; 2) duplicative claims; 3) fail to state a cause of action; and additionally moves to strike paragraphs 7, 16 and 26-31 as scandalous, prejudicial and irrelevant claims. 
Plaintiff does not oppose the portion of Defendant's motion seeking dismissal of [*2]Plaintiff's intentional and negligent infliction of emotional distress claims, nor the portion seeking to strike paragraphs 26 through 31 of Plaintiff's complaint. Accordingly, those portions of the complaint are dismissed without opposition.
MOTION TO DISMISS STANDARD FOR AN EXPIRED STATUTE OF LIMITATIONS
The CPLR delineates the standard for a motion to dismiss. Specifically, when a party seeks dismissal on the grounds that the statute of limitations has run out,[FN2]
the movant bears the burden of establishing "prima facie" that the time in which to sue has expired.[FN3]
Once the movant meets this statutory burden, the burden then shifts to the opposing party to raise a question of fact as to whether the time was tolled, inapplicable or the matter was commenced within the prescribed time frame.[FN4]

PREEMPTION AND TIME BAR

Defendant contends that this matter is time-barred as Plaintiff's claim under the Gender-Motivated Violence Act ("GMVA") expired nine (9) years after she reached the age of eighteen. See N.Y.C. Admin. Code § 10-1105(a). [FN5]
 Although, under New York Municipal Home Rule Law § 10 (hereinafter "Home Rule"), the City of New York may adopt local laws relating to the "government, protection, order, conduct, safety, health, and well-being of persons or property therein,"[FN6]
such authority extends only so far as those local laws are "not inconsistent with the state constitution or any general law." [FN7]
Defendant contends that, in this case, Plaintiff cannot rely on the revival provision enacted by the New York City Council in January 2022—which created a lookback window from March 1, 2023, through March 1, 2025—because that provision is preempted by New York State law, specifically the Legislature's comprehensive revival framework codified in CPLR §§ 214-g, also known as the Child Victims Act (hereinafter "CVA") and 214-j, also known as the Adult Survivors Act (hereinafter "ASA").
i- CPLR §214-g or CVA
In 2019, the New York State Legislature enacted the CVA. As part of the Legislative history, it was explained that the body "acknowledged the unique character of sex crimes where "'[v]ictims of childhood sexual abuse struggle for years to come to terms with their abuse,' and [*3]further explained the justifiable delays in taking action against abusers because '[m]any young adults aren't prepared to deal with the abuse they experienced as children' within the five-year statute of limitations that would otherwise apply."[FN8]
This period was then reasonably extended for an additional year due to COVID-19 pandemic, to remedy the injustice to those survivors caused by application of the relevant statutes of limitations. [FN9]
The statute revived claims of " . . . intentional or negligent acts or omission by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age, incest . . . committed against a child less than eighteen years of age or the use of a child in a sexual performance . . . or a predecessor statute that prohibited such conduct at the time of the act . . . which is barred as of the effective date of this section because the applicable periods of limitation has expired . . . not earlier than six months after and not later than two years and six months after the effective date of this section."[FN10]

ii- N.Y.C. Admin §10 Public Safety
a. §10-1102
Under this section, the Legislative body found that "[i]n light of the void left by [a] supreme court's decision [FN11]
, this council finds that victims of gender-motivated violence should have a private right of action against perpetrators of offenses committed against them under the administrative code. This private right of action aims to resolve the difficulty that victims face in seeking court remedies by providing an officially sanctioned and legitimate cause of action for seeking redress for injuries resulting from gender-motivated violence".[FN12]

b- §10-1105(a) or GMVA
This section provides that "[a] civil action under this chapter shall be commenced within seven years after the alleged crime of violence motivated by gender occurred. If, however, due to injury or disability resulting from an act or acts giving rise to a cause of action under this chapter, or due to infancy as defined in the civil procedure law and rules . . . . Is unable to [commence] at the time such cause of action accrues, then the time . . . shall be extended to nine years after inability to commence . . . ceases. Notwithstanding any provision of law that imposes a period of limitation to the contrary, any civil claim . . . that is barred . . . is hereby [*4]revived and may be commenced not early than six months after, and no later than two years and six months after, September 1, 2022."[FN13]
However, the claim must be one that "(1) the alleged act constitute[d] a misdemeanor or felony against the plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetuated because of plaintiff's gender; (4) in part because of animus against plaintiff's gender; and (5) resulted in injury."[FN14]

iii- CPLR §214-j or ASA
In 2022, the Legislative body in their infinite wisdom, enacted the Adult Victims Act, in order to provide similar relief to adult survivors of " . . . sexual offenses as defined in article one hundred thirty of the penal law committed against such person who was eighteen years of age or older or incest . . . is hereby revived . . . not earlier than six months after and not later than one year and six months after the effective date of this section."[FN15]

In support of Defendant's argument against the Home Rule applicability, he cites Parker v Alexander and argues that the relevant state statutes here are comprehensive and detailed, and therefore "occupy the field" with respect to the revival of civil claims arising from violations of New York State sexual offense statutes, thereby preempting local laws such as the GMVA. [FN16]
Specifically, Defendant maintains that because the "ASA" was enacted four months after the GMVA and the Legislature did not expressly carve GMVA claims out of the scope of the ASA, the ASA occupies the field of revival statutes and thus preempts the GMVA's lookback provision.[FN17]
However, since Plaintiff was a minor at the time the sexual abuse occurred, this Court will not address Defendant's legal arguments concerning the ASA, as inapplicable.
In opposition to Defendant's motion to dismiss, Plaintiff argues that Defendant bears the burden of establishing, prima facie, that the time in which to sue has expired.[FN18]
Plaintiff must then raise a question of fact as to whether the statute of limitations has been tolled or was otherwise inapplicable, or in the alternative that Plaintiff commenced the cause of action within the proscribed time period.[FN19]

Plaintiff disputes that the GMVA is preempted by the CVA or the ASA. She argues that the New York City Council enacted the GMVA in 2000 in response to the 2000 Supreme Court decision which stuck down the Violence Against Women Act (hereinafter "VAWA")[FN20]
and [*5]subsequently on January 9, 2022, adopted an amendment that provided a two (2) year revival window. Plaintiff argues that because her claim is based on sexual abuse she endured from 1999 until 2004, it falls under the GMVA and that the 2022 Amendment is available to her, by virtue of the fact that she was an infant at the time of the sexual contact, and thus her claim is timely.[FN21]
It is Plaintiff's position that neither the CVA nor the ASA preempt the GMVA for several reasons.
i- HOME RULE
Under the New York State Constitution, local governments can adopt local laws that pertain to "government, protection order, conduct, safety, health and well-being," if such local laws are "not inconsistent" with the state constitution or general state laws.[FN22]
Accordingly, the City of New York enacted the GMVA to replace the federal civil rights remedy and "resolve the difficulty that victims face in seeking court remedies by providing an officially sanction and legitimate cause of action for seeking redress from injuries resulting from gender motivated violence.[FN23]

ii- PREEMPTION
(a) Field Preemption
The doctrine of field preemption prohibits a local government from legislating in a field or area of the law where the legislature has assumed full regulatory responsibility.[FN24]
However, "the mere fact that a local law may deal with some of the same matters touched upon by the state law does not render the local law invalid."[FN25]
Here, Plaintiff argues that 1) Defendant fails to provide, with specificity, language or statements made by the New York Legislature of their intent to control the field, but rather recites the CVA language benefiting all New York child sexual assault victims [FN26]
and 2) that Defendant's position is unsupported by case law.
(b) Conflict Preemption
Conflict preemption stands for the proposition that a local law is preempted by the state law when a right or benefit is expressly given by State law which has then been curtailed or [*6]taken away by the local law.[FN27]
It is Plaintiff's position that 1) the GMVA revival amendment is not preempted from the CVA [FN28]
and 2) that conflict preemption only exists when both the State and the local law collide.[FN29]
Here, Plaintiff argues that the GMVA does not take away rights and/or benefits, but rather further New York State's policy interest of protecting its residents from gender motivated crimes.

MOTION TO DISMISS STANDARD FOR FAILURE TO STATE A CAUSE OF ACTION

CPLR §3211(a)(7) provides, in part, that a party can seek dismissal of a legal matter if the pleadings fail to state a cause of action.
When such is the case, as it is here, the Court must give the pleadings liberal construction, accept the facts as alleged in the complaint as true, and afford the plaintiff the benefit of every possible favorable inference.[FN30]

Here, the Defendant argues that Plaintiff's Complaint is riddled with conclusory statements, lacks details or specificity nor does it contain any factual allegations that provides the Court or the parties notice of the "transactions, occurrences or series or transactions or occurrences intended to be proved and the material elements of each cause of action or defense". [FN31]
He further argues that the Court in Hughes v Twenty-First Century Fox, Inc. [FN32]
held that to file a claim under the GMVA, Plaintiff must establish that the alleged act constituted a misdemeanor or felony against the Plaintiff; presenting a serious risk of physical injury; that was perpetrated because of Plaintiff's gender; in part because of animus against Plaintiff's gender; and resulted in injury.
It is Defendant's contention that Plaintiff's pleadings are devoid of any particularity from which it can be adduced that a gender motivated violent act was committed against Plaintiff.
In opposition, Plaintiff argues that Defendant's motion to dismiss should be denied because within the four corners of the Complaint, as initially filed by a pro se Plaintiff, who is now represented by counsel, each allegation in said Complaint sets forth its requisite elements, particularly when liberally construed. [FN33]
Namely, Plaintiff contends that (1) the burden falls on [*7]Defendant to convince the Court that Plaintiff does not have a claim and that said burden never shifts to Plaintiff to rebut a Defendant's defense and that " . . . [P]laintiff will not be penalized because she has not made an evidentiary showing in support of the complaint"; [FN34]
(2) that the GMVA's language only requires " . . . conduct that constitutes a crime of violence — not on whether the offender may or may not be prosecuted . . . "; [FN35]
(3) that New York jurisprudence have defined sexual assault as a crime of violence motivated by gender; [FN36]
(4) that animus exist when consent is not present [FN37]
and that Plaintiff needs not show that she actually sustained damages, but only that "damages attributable to defendant's conduct might be reasonable inferred."[FN38]

MOTION TO STRIKE AS SCANDALOUS, PREJUDICIAL AND IRRELEVANT

Defendant seeks to strike from the pleading allegations in paragraphs seven and sixteen as scandalous, prejudicial and irrelevant pursuant to CPLR § 3024(b). The Court must now determine if those allegations are relevant to this matter and whether those allegations may unduly prejudice a jury.[FN39]
It is Defendant's position that Plaintiff's inclusion of an alleged confession by Plaintiff's cousin is irrelevant and prejudicial.[FN40]
Lastly, Defendant contends that the GMVA " . . . does not require proof of a pattern of misconduct . . . ."
Plaintiff argues that motions to strike scandalous or prejudicial matters from pleadings are generally disfavored [FN41]
and that those two paragraphs are necessary to further establish a pattern of behavior motivated by gender.[FN42]

DISCUSSION

Defendant, during oral arguments, claimed that " . . . [t]his is a matter of first impression [*8]in New York State Courts, but it has significant implications for a number of cases that are currently pending in New York Courts."[FN43]
Although this issue has been litigated in the Second Department, there is indeed no Appellate Division guiding law.[FN44]
Therefore this Court is bound by case law stemming from the Appellate Division First Department.
The Appellate Division in Breest v Haggis, 180 AD3d 83(1st Dep't 2019), held that allegations of rape or sexual assault are sufficient on their own to state a cause of action under the New York City Victims of GMVA. The Court further ruled that "animus" (malice or ill will) is inherent in such acts. Specifically, the Court held that [a]nimus inheres where consent is absent."[FN45]
In his concurring opinion, Justice Tom opined that requiring a plaintiff to categorically provide specific allegations " . . . that defendant harbored animosity towards women . . . could effectively eviscerate the remedial goals of the VGM law."[FN46]

The Court in Engelman v. Rofe, 194 AD3d 26 (1st Dept 2021), reinforced the holding in Breest by holding that nonconsensual sexual contact qualifies as gender-motivated violence. Specifically, the Court held that
Without consent, sexual acts . . . are a violation of the victim's bodily autonomy and an expression of the perpetrator's contempt for that autonomy. Coerced sexual activity is dehumanizing and fear-induing. Malice or ill will based on gender is apparent from the alleged commission of the act itself. Animus inheres where consent is absent. (emphasis added).[FN47]
The Court also upheld New York City's right to Home Rule. Specifically, the Court held that
The VGM's construct is consistent with the City's "broad policing power" to enact legislation to protect its residents from discrimination, including gender-related violence.[FN48]
It is Defendant's position that Plaintiff had multiple opportunities to bring her claims or that plaintiff could have brought her claim as a personal injury claim. We must remember that Plaintiff was a child, and her alleged abuser is her cousin, a family member. Children who talk about their abuse confront different reactions, from "what happens in the family stays in the family," to "let's pretend it didn't happen," a "hate the sin, but love the sinner" mentality, and [*9]sometimes to not believing the child at all. This Court must also acknowledge the realization that cultural and religious beliefs play a role in these matters and that knowing that your abuser is loved by other family members could affect family dynamics, making it more difficult for that child to tell others about the abuse.
Sexual assault not only causes physical harm but also mental and emotional harm. According to Loyola University, Maryland's Counseling Center Website, sexual assault trauma responses vary widely but often involve immediate shock, confusion, and intense emotions like fear, shame, or anger, alongside physical reactions like shaking or numbness, and can manifest long-term as PTSD, dissociation (feeling detached), flashbacks, nightmares, relationship issues, depression, anxiety, and physical pain, often stemming from the brain's instinctive "fight, flight, freeze, or fawn" survival mechanisms, which are involuntary and not a reflection of consent.[FN49]
 
Next, Defendant argues that the complaint if facially insufficient as it fails to state a cause of action. Namely, he argues that Plaintiff's sexual abuse and/or molestation are conclusory in nature and moves to dismiss pursuant to CPLR § 3211(a)(7).
Here, once again, the Court recognizes that the pleadings were filed by a pro-se Plaintiff to secure a viable claim and the courage required for a survivor of alleged sexual abuse to come forward, especially when it is intrafamilial. This Court is of the opinion that a bill of particular and a deposition are tools that can be used to cure deficiencies in a pre-discovery motion to dismiss, as argued by the Plaintiff. However, this Court agrees with Defendant that Plaintiff's complaint must provide sufficient details to allow for a defense. Therefore, Plaintiff is granted leave to amend the Complaint pursuant to CPLR§ 3025.
Lastly, Defendant seeks to strike paragraphs Seven (7) and sixteen (16) pursuant to CPRL § 3024(b) as scandalous, prejudicial and irrelevant. Namely, Defendant argues that the allegations contained in those paragraphs concerning a second alleged victim, are immaterial and prejudicial. This Court agrees.
Accordingly, it is hereby,
ORDERED, that Defendant's motion to dismiss Plaintiff's complaint as time barred is DENIED, and it is further
ORDERED, that Defendant's motion seeking to strike Plaintiff's paragraphs seven (7) and sixteen (16) is GRANTED, and it is further
ORDERED, that Plaintiff is GRANTED leave to amend the complaint; and is further
ORDERED, that Defendant shall serve a copy of this Order with Notice of Entry upon Plaintiff within twenty (20) days of entry of this Order.
This constitutes the Decision and Order of this Court.
Dated: March 24, 2026E N T E R:Hon. Lumarie Maldonado Cruz, J.S.C.

Footnotes

Footnote 1:EF # 1 ¶ 4. 

Footnote 2:See CPLR §3211(a)(5).

Footnote 3:See, Benn v Benn, 82 AD3d 548, 548 (1st Dep't 2011) [quoting Island ADC, Inc. v Baldassano Architectural Group, P.C., 49 AD3d 815, 816 (2d Dep't 2008)].

Footnote 4:See, J.A. Lee Elec., Inc. v City of New York, 119 AD3d 652, 654 (2d Dep't 2014).

Footnote 5:Defendant argues that Plaintiff turned eighteen (18) in 2005, and thus the statute of limitation expired in 2014. See Defendant's Memorandum of Law page 5, EF #14.

Footnote 6:See NY Municipal Home Rule Law § 10(a)(12).

Footnote 7:Id. at (1)(i).

Footnote 8:Matarazzo v. Charlee Family Care, Inc., 218 AD3d 941, (3d Dep't 2023)[quoting NY St Coalition Against Domestic Violence Mem in Support, Bill Jacket, L 2019, ch 11 at 15; see also Senate Introducer's Mem in Support, Bill Jacket, L 2019, ch 11 at 7 ].

Footnote 9:Id.

Footnote 10:See CPLR §214-g.

Footnote 11:On May 15, 2000, the United States Supreme Court held that the constitution provided no basis for a federal cause of action by victims of gender-motivated violence against perpetrators of offenses committed against them either under the commerce clause or the equal protection cause of the 14th Amendment. See, U.S. v Morrison, 529 U.S. 598 (2000).

Footnote 12:See NYC Admin. Code §10-1102.

Footnote 13:See Id. at §10-1105.

Footnote 14:See Bellino v Tallarico, 2024 WL 1344075, *1 (S.D.NY Feb 21, 2024).

Footnote 15:See CPLR §214-j.

Footnote 16:See Parker v Alexander, 2025 WL 268436, at *2 (S.D.NY Jan 2025).

Footnote 17:Id. at *3.

Footnote 18:See Benn, 82 AD3d at 549 (1st Dep't 2011).

Footnote 19:See, QK Healthcare, Inc. v InSource, Inc., 108 AD3d 56, 65 (2nd Dep't 2013).

Footnote 20:See United States v. Morrison, 529 U.S. 598 (2000).

Footnote 21:Plaintiff explains that the sexual contact started when she was approximately eleven (11) years old and stopped when she was sixteen (16) years old.

Footnote 22:EF 18 ¶ 22.

Footnote 23:N.Y.C. Admin. Code §§ 10-1102, 10-1105(a); See, Doe v Schlesinger, 87 Misc 3d 1057(Sup Ct., Kings County 2025).

Footnote 24:See, Police Benevolent Assn. of City of New York, Inc. v. City of New York, 40 NY3d 417, 423 (2023).

Footnote 25:Id at 425 [quoting Jancyn Mfg. Corp. v. Cnty. of Suffolk, 71 NY2d 91, 97 (1987)].

Footnote 26:EF 18, ¶ 25.

Footnote 27:See Garcia v. New York City Dep't of Health & Mental Hygiene, 31 NY3d 601, 617—18 (2018).

Footnote 28:EF 18, ¶ 33 [citing Doe v Black, 2024 WL 4335453 (S.D.NY Sept. 27, 2024) (holding that the CVA does not preempt the GMVA revival amendment)].

Footnote 29:Id. [quoting Matter of Lansdown Entertainment Copr. v NYC Dep't of Consumer Affairs, 74 NY2d 761, 764 (1989)].

Footnote 30:See J.P. Mortgan Sec. Inc. v Vigilant Ins. Co., 21 NY3d 324, 334 (2013).

Footnote 31:See CPLR §3013.

Footnote 32:304 F.Supp.3d 429, 455 (S.D.NY 2018).

Footnote 33:EF 18 ¶ 46-47.

Footnote 34:Id at ¶ 40 [quoting Sokol v. Leader, 74 AD3d 1180, 1181 (2d Dep't 2010)].

Footnote 35:Id at ¶ 43 [citing Doe v Doe, 83 Misc 3d 408, 414 (Sup Ct., NY County, 2024)

Footnote 36:Id at ¶ 44.

Footnote 37:Id.

Footnote 38:Id at ¶ 40 [quoting Fielding v Kupferman, 65 AD3d 437, 442 (1st Dep't 2009)(internal citations omitted)].

Footnote 39:See Soumayah v Minnelli, 41 AD3d 390, 392-393 (1st Dep't 2007).

Footnote 40:EF 14 p.14.

Footnote 41:EF 18 ¶ 51 [citing Pisula v R.C. Archdiocese of New York, 201 AD3d 88, 97-98 (2d Dep't 2021)].

Footnote 42:Id at ¶ 49-50.

Footnote 43:EF 24 p. 2, lines 19-22.

Footnote 44:See generally, M.H. v S.A., 2025 NY Slip Op 51713 (U) (Sup Ct. Kings Co. October 29, 2025).

Footnote 45:Breest, 180 AD3d. at 94.

Footnote 46:Id. at 97.

Footnote 47:Engelman, 194 AD3d at 32 (1st Dept 2021) [quoting Breest, 180 AD3d at 94.]

Footnote 48:Id at 31.

Footnote 49:https://www.loyola.edu/department/counseling-center/services/students/concerns/trauma-ptsd.html